UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22 CR 59 JAR (ACL) |
| | ) |
| BRANDON PRICE, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is Defendant Brandon Price's Motion to Suppress Evidence (Doc. 25) that was seized following a stop of his vehicle on April 2, 2022.

Price argues that the officer who stopped his vehicle did not have probable cause or reasonable suspicion to believe his license plate light was not functioning. *Id*. at 5. He further claims that "anything seized from the vehicle was the poisonous fruit from the unconstitutional act and must be suppressed pursuant to the Fourth Amendment." *Id*. at 5-6.

During the evidentiary hearing,[1] Price confirmed that he was only challenging the basis for the initial stop, specifically, whether the officer had reasonable suspicion to pull

---

[1] The Suppression Hearing Transcript, hereinafter "Tr. ___," was entered as Doc. 31.

him over for a traffic violation. (Tr. at 6.) Price presented evidence that one of the license plate lamps was functioning. *See* Doc. 25-3. That said, the witness who took the photograph admitted that the other lamp did not work. Additionally, the expiration date for the Defendant's temporary license tag is barely visible at close range. *Id*.

The Government argues the traffic stop was reasonable under the Fourth Amendment and the Motion should be denied. The undersigned agrees based on the findings of fact and conclusions of law set out below.

**I. Findings of Fact**

Shortly before midnight on April 2, 2022, Cape Girardeau Police Department Patrolman Gabriel Yoder was sitting in the Ford Groves parking lot watching traffic on Kingshighway when he observed a silver GMC Yukon travelling north with what he perceived as no license plate lights. As the Yukon passed by Yoder "observed that it [had] a temporary, paper tag, and that there was no lights illuminating the plate." (Tr. 10.)

During the evidentiary hearing, Yoder explained he could tell "it was paper tags because it flapped in the wind, and it wouldn't sit like how a normal plate would." (Tr. 19.) Patrolman Yoder explained that traffic laws require license plates "to be completely illuminated and visible up to 50 feet." *Id*. Yoder added that he could "see that it had markings on it, but. . .was trying to catch up to it to be able to read it. [He] couldn't see it." (Tr. 19-20.) He agreed that Missouri law requires temporary tags to reflect an expiration date. (Tr. 20.)

Patrolman Yoder conducted a traffic stop of the Yukon.  The driver pulled into a gas station parking lot.  When Yoder approached the Yukon, he observed the Defendant, Brandon Price, in the driver's seat and there was a female passenger.  He also detected an odor of burnt marijuana coming from the vehicle.  Yoder noticed Price was "rigid" and his hands were shaking"; he appeared to have "excessive nervousness. . .over just being stopped."  (Tr. 12.)  Yoder requested names and dates of birth for Price and the woman so that he could check Price's license status and whether either of them had outstanding warrants.  Yoder also called for a backup unit, because he intended "to conduct a probable cause search of the vehicle based on the odor of burnt marijuana."  (Tr. 13.)

After running a record check from his patrol unit, Patrolman Yoder returned to the Yukon and asked the occupants to exit the vehicle.  He asked Price and the woman if they had valid medical marijuana cards and they both stated they did not.  Price stated there was not any marijuana in the vehicle.  He noted that the female smelled like marijuana when she got in the Yukon.

At that point, Yoder initiated a search of the interior of the Yukon.  He found a glass pipe he associated with methamphetamine use in the center console.  After locating the pipe, he asked the backup officers to detain Price and the lady.  Price resisted being placed in handcuffs.  Officers had to use a taser to gain control of him.

Once Price was secure, Patrolman Yoder returned to his search of the Yukon.  He noticed that the cupholders in the center console were not seated properly.  According to Yoder, it appeared "like it had been removed and placed back in its spot."  (Tr. 16.)  Yoder was able to remove the cupholders.  That action revealed a void in which he

located a loaded .22 caliber revolver, several bags of marijuana, cocaine, methamphetamine, and another pipe. Price was then transported to the Sheriff's Office. Another bag of methamphetamine was located on Price's person.

Price's girlfriend and the mother of his two children retrieved the Yukon from the impound lot. The pair had been in a relationship for more than a dozen years. The girlfriend took a photograph (Doc. 25-3) of the temporary tag in the evening to show that the license plate lamps were functioning. The photograph is a closeup view that depicts, from left to right, the left side license plate lamp, the temporary tag, and a few inches past the right side of the temporary tag. It appears a flash was used to take the photograph based on the brightness of the roughly six-inch portion of the rear door that is visible in the image. *Id*. The brightness of the one functioning light is difficult to assess.

On cross-examination, the girlfriend admitted she only included the left-side license plate lamp in the photograph, "because the other light wasn't working." (Tr. 43.) She claimed that someone at the police department advised her that only one light needed to function properly. The girlfriend further testified that she was able to read the expiration date on the temporary tag. That said, she agreed it was difficult to read the date. When pressed on the issue, she stated "[i]n the picture it looks faded, but when I looked at it on the back of the truck, it doesn't, so that could just have been from my camera." (Tr. 41.)

When Patrolman Yoder was shown a photograph of the temporary tag that had been taken shortly after the traffic stop, he observed that the expiration date markings were not visible, they appeared to be faded. The Court finds that the expiration date was

indeed faded and could not have been legible from a distance over several feet, most certainly not at fifty feet. The Court further credits Yoder's testimony that although he was able to discern the Yukon had a temporary tag, he was not able to read the pertinent information as required under traffic laws.

Price is charged with being a previously convicted felon in possession of a firearm and possession of methamphetamine. He requests suppression of the evidence seized from his vehicle on April 2, 2022.

## II. Conclusions of Law

Price challenges the traffic stop and claims that the evidence seized from his vehicle should be suppressed. The Court finds the stop of the vehicle was according to law and constitutional. As to whether the gun and drugs were lawfully seized, the issue before the Court is whether Patrolman Yoder had probable cause to conduct a search of Price's vehicle.

### II.A. Traffic Stop

"The Fourth Amendment is not violated if the officer making an investigative stop has a reasonable suspicion of criminal activity." *United States v. Harris*, 617 F.3d 977, 978 (8th Cir. 2010) (citations omitted). The Eighth Circuit has repeatedly held that "even a minor traffic violation provides an officer with probable cause to stop the driver." *Id*. at 979 (citing *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008). *See also United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc); *United States v. Mallari*, 334 F.3d 765 (8th Cir. 2003).

"To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *Jones*, 275 F.3d 673, 680 (8th Cir. 2001).  An officer is justified in stopping a motorist when the officer "objectively has a reasonable basis for believing that the driver has breached a traffic law." *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996).  *See United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken belief, but objectively reasonable basis for believing, that a traffic violation occurred supported traffic stop).

The Government cited Mo. Rev. Stat. § 307.075, which requires "lighting sufficient to render rear license plate markings 'clearly legible from a distance of fifty feet.'"  *See also Sturgeon v. Faughn*, 36 F.4th 804, 808 (8th Cir. 2022) (holding officer had reasonable suspicion to conduct traffic stop where tag lights were functioning but dim.)

Price offered his girlfriend's testimony as evidence that Patrolman Yoder did not observe a traffic violation before stopping the Yukon.  Although it appears one of the lamps was functioning to some degree, the expiration date on the temporary tag was most certainly illegible from fifty feet.  This Court accepts Yoder's testimony as being truthful.  He did not try to dress up the traffic stop or suggest that Price had committed any crime other than driving the vehicle without the temporary tag being properly illuminated.  The Court finds that Patrolman Yoder's action of stopping the Yukon was objectively reasonable in the circumstances.

Based on the foregoing, the stop of the vehicle was according to law and constitutional.

**II.B.  Probable Cause for Search**

Price also alleges that the seizure of the illicit items in the Yukon must be suppressed as fruit of the poisonous tree.  He argues, "[t]he vehicle was only searched based upon the unlawful stop of the vehicle and the evidence seized was the direct result of the unconstitutional act of stopping the vehicle without probable cause."  (Doc. 25 at p. 5.)  The record before the Court reflects that the search of the vehicle was conducted due to Patrolman Yoder detecting an odor of marijuana coming out of the vehicle.  The search had nothing to do with the traffic stop.

The automobile exception to the warrant requirement "allows a police officer who has lawfully made a roadside stop of an automobile to search that vehicle without a warrant if probable cause exists to believe that contraband or evidence of a criminal activity is located inside."  *United States v. Caves*, 890 F.2d 87, 89 (8th Cir. 1989) (citations omitted).  "Probable cause for an automobile search exists if the facts and circumstances known by the police when they began the search were 'sufficient in themselves' for a person 'of reasonable caution' to believe that contraband or evidence of criminal activity was in the vehicle."  *Id*. at 90.

In *Caves*, the Eighth Circuit went on to state:

> The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search."  *See Johnson v. United States*, 333 U.S. 10, 13 (1948) (observing that the odor of an illegal substance testified to by a qualified affiant "might very well be found to be evidence of a most persuasive character").  Many lower courts have relied primarily on the odor of marijuana in determining that probable cause existed for a warrantless automobile search.  *See, e.g., United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (border patrol had probable cause after he detected

burnt marijuana through a rolled-down window and driver appeared nervous); *United States v. Loucks*, 806 F.2d 208 (10th Cir. 1986) (probable cause existed after automobile was stopped for speeding, driver was "reeking" of marijuana as he sat in patrol car, and officer smelled what he thought was still-burning marijuana in the detained vehicle); *United States v. Haley*, 669 F.2d 201 (4th Cir. 1982) (patrolman had probable cause after he stopped speeding automobile, smelled intense odor of marijuana emanating from driver's body while he sat in police cruiser, and also smelled strong marijuana odor when passenger rolled down window of the stopped vehicle).

*Id.  See also United States v. Fladten*, 230 F.3d 1083, 1085-86 (8th Cir. 2000) (per curiam) (applying automobile exception to challenged warrantless search and seizure).

The odor of marijuana that was detected by Patrolman Yoder provided him with probable cause to believe that the vehicle contained the controlled substance thereby establishing probable cause for a search of the vehicle.  The search of the Yukon was according to law and not a violation of Price's constitutional rights.

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Doc. 25) be **denied**.

Further, the parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 13th day of April, 2023.

                                                     s/*Abbie Crites-Leoni*
                                                    ABBIE CRITES-LEONI
                                                    UNITED STATES MAGISTRATE JUDGE